## Pennsylvania School Boards Association, Inc. v. United Airlines

*Michael I. Levin,* for plaintiff.
*Craig A. Stone, Timothy I. Mark* and *Robert H. Brown,* for defendant.

DOWLING, *J.,* December 8, 1980—Flying in the teeth of the well established ground rule that summary judgment be rendered only under the clearest of ceilings, both parties seek such peremptory relief. The issue between these jumbo litigants is the sum of $2,187.76 which plaintiff, Pennsylvania School Boards Association, Inc. (PSBA) paid defendant, United Airlines (United), as down payment for certain chartered flights to a convention in Houston, Texas. PSBA bases its suit on the assertion that the contract with United was entered into under a mutual mistake of fact or in the alternative, under circumstances showing fraud or misrepresentation. Both claim no issue of fact and hence requested judgment as a matter of law. Both must be shot down.

PSBA participates in the activities of the National School Boards Association (NSBA) and has traditionally attended the latter's annual convention. For several years it had contracted with various airlines to provide service to the conventions on

an "affinity" charter basis* because, as PSBA claims, these charters were the cheapest and most advantageous available. In 1976 when PSBA began to make arrangements for the 1977 convention it received notice from the NSBA that affinity charters were no longer available. PSBA further asserts that when it entered into negotiations with United, it was represented by United that such flights had been "done away with." PSBA claims that based upon these representations, it executed a contract for the Advanced Booking Charter (ABC) form of charter and deposited $3,411.92 with United. Later PSBA ascertained that affinity charters were still available and notified United that it wanted to void two of the three flights under the ABC contract due to the mistake. It requested that the deposits for those flights be applied to the remaining one which PSBA also wanted changed to an affinity flight. United refused to change the remaining flight to affinity, cancelled it and retained the deposits on the two flights cancelled by PSBA. PSBA's deposit as to the third flight was returned. As a result of United's retention of the balance of the deposit money paid by PSBA, it instituted the instant suit.

United has denied, inter alia, that it told PSBA that affinity charters were no longer available but instead claimed that it informed PSBA that it had not met the eligibility requirements established by the Civil Aeronautics Board (CAB) for affinity status. United further contends that it told PSBA that CAB would probably not grant PSBA a waiver of the affinity requirements and that it should enter into an ABC charter.

---

*This provides for a preferred price to members of organizations meeting certain criteria pertaining to dues, voting rights, relations to local, state and Federal organizations, etc.

The crucial question in every motion for summary judgment is whether there is a genuine issue as to any material fact. And in passing upon a motion for summary judgment "'it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried. All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment.'" Schacter v. Albert, 212 Pa. Superior Ct. 58, 62, 239 A. 2d 841 (1968).

A critical fact which is in dispute centers around whether or not PSBA was, at the time they entered into the contract with United, eligible for affinity status. In its attempt to convince the court that it was eligible, PSBA notes that it operated charters on an affinity basis, without a waiver from CAB with various airlines in previous years. While United does not deny this, it claims that its interpretation of the CAB regulation in 1976 concerning qualification for affinity status led it to believe that PSBA was not eligible and that it should contract under an ABC charter. To support its position, United points to several CAB directives and decisions which show instances where applications by several groups for affinity status were denied and where CAB indicated that if an organization could obtain a charter under the ABC or OTC plans it would generally deny requests for waivers of affinity rules. Using these decisions from the CAB, United determined that PSBA's organizational make-up was such that it would fit into the class of groups which would be denied affinity status and thus it recommended to PSBA to execute the ABC charter.

It is important to note that PSBA categorically denies United's characterization of PSBA's make-

up for purposes of meeting the CAB affinity requirements thus raising a further contested issue. The affidavits filed by United which set forth the CAB letters denying affinity status to certain groups do not convincingly show that PSBA's organizational make-up was so similar to them that the CAB would have denied PSBA attempts to operate an affinity charter. In addition, the letters and decisions from CAB note that its policy is to deny waivers of the affinity rules when a charter could be operated absent a waiver under another of the CAB's charter plans. However, it has not been shown by United that a request for a waiver was necessary in this case. The possibility that PSBA was eligible, outright and without waiver, is given credence by the fact that they were able to operate affinity flights, without a waiver, both prior to and after the contract in question. These facts about PSBA's history of official status are, of course, not determinative but clearly show that there is a genuine factual dispute between the parties which precludes this court from deciding as a matter of law whether or not PSBA was eligible for affinity status and therefore ultimately deciding whether the parties were contracting under a mistake.

Another reason for this court to deny the respective motions is the dispute between the parties concerning the costs and benefits of affinity charters relative to the ABC charters. In order for PSBA to ultimately prevail on its attempt to rescind the contract in question on any of its theories, it is essential that it be able to show that it was harmed. United contends that the cost of ABC charters was actually lower than the affinity charters, but PSBA asserts that certain added costs for the ABC charter including bonding and depositing requirements

make it more costly than the affinity charter. Neither party sets forth in sufficient detail other nonmonetary features of the different charters which could have possibly helped this court determine whether or not PSBA suffered a loss by United's representation to it that it should enter into an ABC contract.

The only remaining issue raised by the parties which deserves mention is the assertion by United that the present action is barred by a two year statute of limitations which is contained in the tariffs which were part of the contract here in question. These tariffs must be filed with the CAB by every airline in accordance with the Federal Aviation Act of August 23, 1958, 72 Stat. 758, as amended, 49 U.S.C.A. § 1373. While United makes a convincing argument that the tariffs have the force and effect of law in regards to the contract between the parties, we cannot agree with United's interpretation of that part of the tariff dealing with the two year statute of limitations. The wording in question is contained in Rule #16 of United's tariffs which were submitted by affidavit and which appear as follows:

Rule No. 16 - Claims

Time Limitations: No action shall be maintained for any loss of, or any damage to, or any delay in the delivery of, any property or baggage, or on any other claim (excepting only personal injury or death), arising out of or in connection with transportation of, or failure to transport any passenger or property or baggage, unless notice of the claim is presented in writing to an office of UA within 45 days after the alleged occurrence of the events giving rise to the claim, and unless the action is com-

menced within 2 years after such alleged occurrence, but failure to give the above notice shall not be a bar if the claimant establishes to the satisfaction of UA that he was unable to give such notices.

The court's reading of the language of this tariff leads it to believe that the time limitation relates only to claims arising out of or in connection with transportation. Such is not the case with the action now under consideration. This cause of action does not relate to transportation but instead concerns possible fraud, misrepresentation or mistake which relate to the formation of a contract for transportation to be rendered in the future.

This court hastens to observe that the skies surrounding this case seem more hostile than friendly in light of the parties' obvious desire to extensively litigate a seemingly easily negotiated matter.

Accordingly, we enter the following

### ORDER

And now, December 8, 1980 motions for plaintiff and defendant for summary judgment are denied.